# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| AARON WOODSON, | CASE NO. 4:21-cv-2291 |
| PLAINTIFF, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| RICHARD BOWEN, et al., | |
| DEFENDANTS. | |

*Pro se* plaintiff Aaron Woodson filed this action under 42 U.S.C § 1983 against Ohio State Penitentiary ("OSP") Warden Richard Bowen, OSP Unit Manager Mr. Remish, OSP Unit Manager Chief Mr. Jackson, Ohio Department of Rehabilitation and Correction ("ODRC") Bureau of Classification Chief Brian Wittrup, ODRC Regional Director Ed Banks, and OSP Case Manager Mr. Novak. In the complaint, plaintiff asserts that he is being held at OSP. He claims his placement at this facility is a denial of due process. He seeks monetary damages, transfer to another prison, and release into the general population.

## I. Background

Ohio recently revised its security classification system. All Ohio inmates are assigned a numerical security classification from level 1 through level 4, with 1 being the lowest security risk and 4 being the highest. *See* Ohio Dep't Rehab. & Corr. Policies and Procedures, No. 53-CLS-01 (Classification).[1] These levels appear to be the same as those under the prior classification system.

---

[1] ODRC policies and procedures can be found at: https://drc.ohio.gov/policies-procedures.

Level 1 and level 2 inmates are granted the greatest level of privileges and autonomy. *Id*. In level 3, inmates must be housed at a double fence facility and their movement is more restricted. *Id*. Level 3 is designated for individuals who are likely to engage, or who have previously engaged, in disruptive prison behavior requiring more control. *Id*. Level 4 is considered to be maximum security. Inmates at level 4 require enhanced supervision. Their limited movements are controlled and supervised. Their cells must be securable, and they must be held in single cells unless approved by the deputy director of prisons. Inmates at level 4 have established histories of violence and disruptive prison behavior. They may also be given this classification if they participate in acts that threaten the security of the institution. *Id*. These four levels are considered to comprise the general population of the prison system. *Id*.

Under the previous classification system, inmates could also receive a level 5 or super maximum-security classification. *Wilkinson v. Austin*, 545 U.S. 209, 215, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). This classification level appears to have been eliminated. Instead, inmates may now receive a level E designation for Extended Restricted Housing (ERH). *See* Ohio Dep't Rehab. & Corr. Policies and Procedures, No. 53-CLS-04 (Level E Placement (ERH)). ERH is the most restrictive security level and is reserved for incarcerated individuals who cannot be managed safely in the general population. ERH is not used for punishment. *Id*. It is reserved for those who exhibit such violent, disruptive, predatory, riotous, or other serious behaviors that they pose a serious threat to the safety of other inmates, prison staff, and the general public. *Id*. Inmates may receive this classification at reception when first entering the prison system, or they may receive this classification while serving their sentence in general population if they meet both administrative and behavioral criteria outlined in the policies and procedures, and only after a series of procedural hurdles and appeals. *Id*. Furthermore, while the prior policy permitted indefinite placement at the

supermax security level, the new policy requires the Warden to determine at the outset the length of the ERH placement, which must be set at two (2) years or less, up to five (5) years, up to ten (10) years, or for an indefinite length. Any placement for more than two (2) years requires written approval by the Deputy Director of Prisons. *Id*. Level E male inmates are primarily housed at the Southern Ohio Correctional Facility, OSP, and the Toledo Correctional Institution. *Id*.

Plaintiff is an inmate housed at OSP. He is currently serving a life sentence without the possibility of parole imposed by the Cuyahoga County Court of Common Pleas for aggravated murder and carrying a concealed weapon. He was recently sentenced to serve an additional two (2) years and six (6) months for an assault that took place while he was incarcerated in an ODRC prison in Lucas County.[2] *See State of Ohio v. Woodson,* CR-17-1165 (Lucas Cnty. Ct. Comm. Pl. June 21, 2017). Plaintiff does not indicate his security classification. He alleges, however, that any placement at OSP, regardless of security classification, is a denial of due process due to the level of restrictions imposed at that facility. He cites *Wilkinson*, 545 U.S. at 214–17 as authority for this assertion.

## II.   Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), the Court is required to dismiss an in forma pauperis action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99

---

[2] The assault most likely occurred at the Toledo Correctional Institution, the only prison facility operated in Lucas County, Ohio by the ODRC.

F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than an unadorned, the defendant unlawfully harmed me accusation. *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir. 1998).

**III.    Analysis**

Ohio opened OSP in 1998 after a riot in the Southern Ohio Correctional Facility. OSP has the capacity to house up to 504 inmates in single-inmate cells and is designed to separate the most violent and dangerous prisoners from the rest of the general prison population. *Wilkinson*, 545 U.S. at 214–17 (citing *Wilkinson v. Austin*, 189 F. Supp. 2d 719, 723 (N.D. Ohio 2002)). Conditions in the most secure areas at OSP are more restrictive than those found at any other prisons in Ohio. *Id*. At the highest security levels at OSP, inmates must remain in their cells, which measure 7-by-14 feet, for 23 hours per day. *Id*. at 214. OSP cells have solid metal doors with metal strips along

4

their sides and bottoms, which prevent conversation or communication with other inmates. All meals are eaten alone in the inmate's cell instead of in a common eating area. *Id*. Visitation is by appointment and is limited to three visits per month per inmate.[3] Since its opening, OSP has taken in lower security level inmates. The inmates that pose less of a security risk are housed under fewer restrictions. The prison also has a camp for security level 1 inmates. Those inmates are housed in a separate building.

In *Wilkinson*, *supra*, the Supreme Court considered whether conditions at OSP triggered due process protections before inmates could be transferred to the super-maximum-security facility. After considering all the factors, based on the prison's highly restrictive conditions and the indefinite period of time for which inmates were housed at OSP, the Court determined that transfer to the supermax facility required due process protections. The Court then determined that Ohio's policy for placing inmates in OSP was sufficient to satisfy the requirements of due process. *Id.* at 215–218.

Under the ODRC policy considered by the Supreme Court in *Wilkinson*, classification review for OSP placement began when a prison official prepared a "Security Designation Long Form" detailing the reasons for the inmate's recommendation for super-maximum-security. *Id*. A three-member Classification Committee then held a hearing to review the proposed classification. *Id*. At least 48 hours before the hearing, the inmate was provided with written notice summarizing the conduct or offense triggering the review. *Id*. At the time of notice, the inmate also had access to the Long Form, which detailed why the review was initiated. *Id*. at 216. The inmate was permitted to attend the hearing, could offer any pertinent information, explanation and/or

---

[3] https://drc.ohio.gov/osp

objections to [OSP] placement, and could submit a written statement, but was not permitted to call witnesses. *Id*. If the Committee recommended OSP placement, the Committee documented the decision on a "Classification Committee Report" (CCR), setting forth "the nature of the threat the inmate presents and the committee's reasons for the recommendation" as well as a summary of any information presented at the hearing and sent it to the Warden of the prison where the inmate was housed. *Id*. at 217. The Warden then reviewed the Committee's recommendation, and if he or she agreed with the recommendation, he or she forwarded the CCR to the Bureau of Classification for a final decision. *Id*. at 64. The CCR was served upon the inmate, notifying him of the Committee's and Warden's recommendations and reasons. *Id*. The inmate then had fifteen (15) days to file any objections with the Bureau. *Id*. After the 15-day period, the Bureau reviewed the CCR and made a final determination. If the Bureau approved the Warden's recommendation, the inmate was transferred to OSP. The inmate then received another review by an OSP staff member within 30 days of his arrival. *Id*. If the OSP staff member deemed the inmate inappropriately placed, he prepared a written recommendation to the OSP Warden that the inmate be transferred to a lower security institution. If the inmate was deemed properly placed, he remained in OSP and his placement was reviewed on at least an annual basis.

This review process did not change significantly with the recent modifications made to the security classification system. An inmate assigned to general population can only be raised to Level E (ERH) if he first satisfies both the administrative and behavioral criteria listed in the policy. An inmate meeting these criteria may be recommended for ERH by a Rules Infraction Board member, a member of the prisoner's unit classification committee, or a prison executive staff member. That recommendation goes to the Warden who can accept or deny the recommendation. If the Warden agrees with the recommendation, the inmate is given a hearing

6

by the Serious Misconduct Panel ("SMP"), which is substantially similar to the hearing before the three-member Classification Committee that was provided under the prior policy. Inmates also receive the same notices and hearing rights as they did under the prior policy. The SMP will then complete the first part of the Serious Misconduct Panel form listing all of the information from the hearing. If the SMP recommends that the inmate not be placed in ERH, the matter ends. If the SMP recommend ERH placement, the Serious Misconduct Panel form with the recommendation is served on the inmate and forwarded to the Warden. The inmate has seven (7) days to appeal that recommendation. After seven (7) days, the Warden reviews the completed form. He or she has the option to deny the ERH placement altogether, to deny ERH placement but increase the inmate's security classification and/or transfer the inmate to the general population in another prison, or to recommend ERH placement. If the Warden deems ERH placement to be appropriate, the Warden must determine whether the placement is for two (2) years or less, up to five (5) years, up to ten (10) years, or for an indefinite period of time. Placements of more than two (2) years require prior approval of the Deputy Director of Prisons. The inmate has the right to appeal the decision of the Warden to the Regional Director within fifteen (15) calendar days. After placement in one of the three ERH facilities takes place, the inmate will be assigned a presumptive release date that does not exceed the placement period assigned. *See* Ohio Dep't Rehab. & Corr. Policies and Procedures, No. 53-CLS-10 (Level E (ERH) Security Reviews). Inmates in ERH receive status reviews every seven (7) days and a full committee review at least annually. If the weekly reviewers believe the inmate is possibly ready for release from ERH, the reviewers refer the inmate to the ERH review committee. *Id*. It is anticipated that inmates in ERH status will be released prior to their presumptive release dates.

Plaintiff does not list his security classification, nor does he indicate that he is one of the ERH placements at OSP. Even assuming plaintiff is at the highest ERH placement level at OSP, he has not alleged facts suggesting he was denied due process. While placement in OSP under ERH or level E security status triggers due process protections, that merely means that the State of Ohio must offer procedural protections that weigh the inmate's interest in avoiding the placement with the government's interest in protecting other inmates and prison staff. The State must ensure against erroneous deprivation of the inmate's liberty interest. *Wilkinson*, 545 U.S at 224–25 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

The Supreme Court determined that the procedural protections given to inmates under the prior policy were sufficient to provide due process. *Id*. The new policy currently in place sets forth substantially similar procedures to those considered by the Supreme Court. In fact, they provide even greater procedural protections for inmates by providing a presumptive release date and weekly reviews. Plaintiff offers no challenge to the sufficiency of the process itself. Furthermore, plaintiff has not alleged facts suggesting he was denied this process prior to his placement. Plaintiff fails to state a claim upon which relief may be granted.

## IV.    Conclusion

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: March 25, 2022

                                               **HONORABLE SARA LIOI**
                                               **UNITED STATES DISTRICT JUDGE**